THE PHŒNIX MUTUAL LIFE INSURANCE COMPANY, Appellant, v. LIZZIE SIMONS *et Vir*, Respondents.

Kansas City Court of Appeals, January 16, 1893.

1. **Contracts:** CONFLICT OF LAWS: VALIDITY. The validity of a contract,—whether as to the form or manner of its execution, or as to the capacity of parties,—should be determined by the law of the state where the same is entered into, and, if valid there, it is valid everywhere; and this rule alike governs the disabilities of coverture, infancy, etc.

The Phœnix Mut. Life Ins. Co. v. Simons.

2. ———: ———: WHERE MADE: DELIVERY: MARRIED WOMAN. A note made by a married woman dated in Kansas, executed in Missouri, was sent to and delivered in Kansas. *Held*, a Kansas contract, as it was the delivery that completed the contract and gave it life; and it, therefore, bound the maker according to the laws of Kansas, which would be enforced in the Missouri courts.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED AND REMANDED.

*Cory & Hulbert,* for appellant.

(1) The note was a Kansas contract. *Stix v. Matthews,* 63 Mo. 373; s. c., 75 Mo. 96; *Butler v. Meyer,* 17 Ind. 77; *Waldron v. Richings,* 3 Daly (N. Y.) 288; 9 Abbott's Practice Reports (N. S.) 359; *Staples v. Nott,* 28 N. E. Rep. 515; *Bank v. Southwick,* 67 How. Pr. 324; *Gay v. Rainey,* 89 Ill. 221; 31 Am. Rep. 76; *Cook v. Moffatt,* 5 How. Pr. 295; *Marvin v. McCullum,* 20 Johns. 288; *Briggs v. Latham,* 36 Kan. 255; *Hiatt v. Bank,* 8 Bush (Ky.) 193; *Huthsing v. Bosquet,* 17 Fed. Rep. 54. (2) The note being a Kansas contract, it must be governed by Kansas law. *Evans v. Cleary,* 125 Pa. St. 204; 17 Atl. Rep. 440; *Hill v. Chase,* 143 Mass. 129; 9 N. E. Rep. 30; *Baum v. Birchall* (Sup. Court Pa. July 13, 1892), 24 Atl. Rep. 620; *King of Prussia v. Kuepper,* 22 Mo. 550; *Stix v. Matthews,* 75 Mo. 96; *Dodge v. Coffin,* 15 Kan. 277; *Railroad v. Maltby,* 34 Kan. 125; *Crooker v. Pearson,* 41 Kan. 410; *Hamilton v. Railroad,* 39 Kan. 56; Story on Conflict of Laws, secs. 102–3, 242–8; *Beckham v. Tootle, Hanna & Co.,* 19 Mo. App. 596; *Hach v. Hill,* 106 Mo. 18; *Roach v. Type Foundry,* 3 West Rep. (Mo.) 186; *Bell v. Packard,* 69 Me. 105; 31 Am. Rep. 251; *Milliken v. Pratt,* 125 Mass. 374; 28 Am. Rep. 241; *Bank v. Hutchinson,* 81 N. Y. 566. (3) Respondent

made the contract in Kansas. She cannot now plead coverture in a Missouri court. *Andrews v. His Creditors,* 11 La. 464, 476; *Bowen v. Bradley,* 9 Abb. Pr. (N. S.) 395; *Huthsing v. Bosquet,* 17 Fed. Rep. 55.

*Burton & Wright,* for respondent.

(1) At common law and under the law of Missouri, at the time the note sued on was executed by respondent, coverture operated as a legal disability to contract, and all contracts of a married woman were absolutely void at law. No personal judgment, or judgment at law, could be rendered against her. *Chouteau v. Merry,* 3 Mo. 182; *Bauer v. Bauer,* 40 Mo. 61; *Higgins v. Peltzer,* 49 Mo. 152; *Lincoln v. Rowe,* 64 Mo. 139; *Weil v. Simmons,* 66 Mo. 618; *Shroyer v. Nickell,* 55 Mo. 267; *Davis v. Smith,* 75 Mo. 225–7; *Music v. Dodson,* 76 Mo. 624–5; *State to use v. Kevill & Waples,* 17 Mo. App. 144; *Bachman v. Lewis,* 27 Mo. App. 87; *Brumback v. Weinstein,* 37 Mo. App. 523–4; *Saulsbury v. Corwin,* 40 Mo. App. 373. (2) If respondent could not make any contract that would bind her at law, how can she be said to have made a contract by which she was bound under the laws of Kansas and in a Missouri court? The note sued upon was as to respondent not a "Kansas contract;" it was not a contract at all. The authorities above cited; 3 American & English Encyclopedia of Law, 518, par. "f," and note 3; *Milliken v. Pratt,* 125 Mass; 28 Am. Rep. 249. (3) The fact the promise of Mrs. Simon may have been acted upon by the appellant does not estop respondent from denying the validity of the promise on the ground of her inability to contract. *Saulsbury v. Corwin,* 40 Mo. App. 373.

GILL, J.—The basis of this action is a promissory note, with interest coupons attached, purporting to

have been executed at Fort Scott, Kansas, July 1, 1885, and signed by defendant, Mrs. Simon, Sol Simon, her husband, and other parties. In addition to the matters of ordinary promise to pay, etc., the note contains this clause, to-wit: "It is further agreed and declared, that this note and the coupons hereto attached are made and executed under, and are in all respects to be governed and construed by, the laws of the state of Kansas, and are given for an actual loan of $1,200." The ground of defense is, that Mrs. Simon was at the date of the note a married woman residing at Nevada, Missouri, and that she signed the note at Nevada. She claims, therefore, that under the law as it then existed in Missouri she could not make a binding contract and is not for that reason liable. At the trial the court sitting as a jury made the following finding of facts:

"*First.* The plaintiff is a Connecticut corporation with its principal place of business in Hartford, Connecticut. The Union Loan & Trust Company is a corporation with its head office at Fort Scott, Kansas. [It was in 1885 known as the Van Fossen & Wilcox Loan & Real Estate Bank, and is the successor to the business of the firm of Van Fossen & Wilcox of the same city. *Second.* On July 1, 1885, defendants, Sol Simon and Lizzie Simon, were and they still are husband and wife, and lived in Nevada, Missouri, where they still live. *Third.* On the above date Sol Simon and one A. M. Huff borrowed $1,200 from the plaintiff, and executed the note sued upon herein to secure its payment. Defendant, Lizzie Simon, signed the note simply because her husband asked her to do so, and because the plaintiff required it. *Fourth.* A solicitor of plaintiff, living at Nevada, Missouri, took defendants', Sol. Simon's and A. M. Huff's, written application for the loan sent it by mail to the Van Fossen & Wilcox Loan & Real Estate Bank at Fort Scott, which com-

pany was agent of plaintiff. Said company at Fort Scott investigated the circumstances of the proposed loan, approved the same, and sent the papers to plaintiff at Hartford, Connecticut, by mail. The defendant, Lizzie Simon, did not sign said application, nor is there any evidence to show that she knew anything about it. The plaintiff approved the same and returned the papers with the money to said company at Fort Scott. Said company made out the note ready for signature and sent it to the solicitor at Nevada. Defendants each signed it at Nevada, Missouri, and it was then sent to said company at Fort Scott by mail. Said company approved the note as signed, and sent the money by express to defendant, Sol Simon, at Nevada, Missouri. *Fifth.* Said solicitor had no power to approve said application and approve the loan, or to approve the papers when signed. *Sixth.* At the date mentioned, at all times since, under the laws of Kansas, a married woman could lawfully make contracts, transact business, sue and be sued, and conduct all transactions of a business nature, exactly as a *feme sole* or a man. At that time a person, under the laws of Kansas, could lawfully contract for the payment of twelve per cent. interest, and the same could be collected by law. *Seventh.* The said note now amounts to $2,140.85, and bears twelve per cent. interest and is unpaid."

To the finding of these facts no objections were made or exceptions taken. Over the plaintiff's objections the court declared the law as follows: "Lizzie Simon, being a married woman at the date mentioned, was incapable of making such a contract as that sued on, and she is not bound by it." And, thereupon, a judgment was entered against Sol Simon, but in favor of defendant, Lizzie Simon, and the plaintiff appealed.

When the defendant, Mrs. Simon, signed this note at Nevada, Missouri, married women were in this state still under the common-law disability and incapacitated to make such a contract, while under the laws of the state of Kansas she was clothed with full power so to do, as a *feme sole*. If then the responsibility of this married woman is to be determined by the laws of Kansas, as they were then and now, then she should be held on this note. But if on the other hand we are to measure her liability by the laws of Missouri, as they existed in 1885, then the defendant, Mrs. Simon, is not bound on the instrument sued on. Here then we have the turning point in this case. It seems quite universally declared, that under the common law of comity the validity of a contract, whether as to the form or manner of its execution, or as to the capacity of the parties, should be determined by the law of the state where the same is entered into, and, if the parties are bound by it there, then they are bound thereby everywhere, and the courts will so respect the foreign law as to enforce such agreements, even though if they had been made *sub lege fori* such contracts would be null and void. This rule is of equal force whether the disability arises from coverture, infancy or other causes. If then the note here in suit is to be regarded a *Kansas contract*, that is, one made in that state, then clearly under the laws of that commonwealth, the defendant would be held liable by the courts of that state. And it is equally plain she should in that event be likewise charged by the courts of Missouri.

Now in our opinion the facts above stated show this note to have been made in Kansas and not in Missouri. The instrument is dated at Fort Scott, Kansas, was signed at Nevada, Missouri, but *delivered* to the plaintiff at Fort Scott, Kansas. It then became a completed contract at its *delivery*, and not before.

The mere signing the paper did not make or locate the contract. It was the subsequent delivery that first gave it life. Until the instrument signed at Nevada, Missouri, had reached the plaintiff's agent at Fort Scott and was by them received and approved the contract was incomplete. Before that there was no perfected obligation because no delivery. The solicitor at Nevada had no authority to pass on the paper, he was a mere conduit or middle man through which the parties negotiated. He only took the note, after it was signed at Nevada, and passed it to the company at Fort Scott for their action. The delivery was only complete when these agents of the plaintiff in Kansas received it. It was these agents at Fort Scott who had authority from the plaintiff to close up the loan, and pay the money. They did receive the note sent to them from Nevada, Missouri, and then consented to and did pay over the money which they had been authorized to loan. The *lex loci contractus* was then fixed. It was at Fort Scott, Kansas, and not at Nevada, Missouri. The foregoing propositions are amply supported by eminent judges and text-writers. *Milliken v. Pratt*, 125 Mass. 374, and cases cited; *Hill v. Chase*, 143 Mass. 129; *Gay v. Rainey*, 89 Ill. 221, 225; *Butler v. Meyer*, 17 Ind. 77; *Bell v. Packard*, 69 Me. 105; *Lawrence v. Bassett*, 5 Allen, 140; *Baum v. Birchall*, 24 Atl. Rep. 620; *Thompson v. Ketcham*, 8 Johns. (N. Y.) 190; *Greenwood v. Curtis*, 6 Mass. 377; *Scudder v. Bank*, 91 U. S. 406, 412; Story on Conflict of Laws [8 Ed.] 842; *Stix v. Matthews*, 63 Mo. 373.

Judgment reversed and cause remanded. All concur.