## Wytheville.

### YOUNG v. HART.

### June 11, 1903.

#### Absent, Cardwell, J.

1. CONFLICT OF LAWS—*Foreign Contracts of Married Women—Valid Where Made—Remedy.*—A contract of a married woman valid where made and to be performed is generally held to be valid everywhere, except when sought to be enforced in a jurisdiction where there is a total incapacity on the part of married women to contract, as at common law.

2. APPEAL AND ERROR—*Evidence to Support Judgment—Foreign Contract of Married Woman—Personal Judgment.*—This cause being heard here as on a demurrer to the evidence by the plaintiff in error (a married woman), and there being evidence tending to show that the contract in suit, made by her, was binding on her both in the jurisdiction where made and to be performed, the personal judgment of the trial court rendered against her will be affirmed.

3. CONFLICT OF LAWS—*Foreign Contract—Remedy—Law of Forum.*—In respect to the remedy upon valid foreign contracts sought to be enforced in a domestic tribunal, the law of the forum prevails.

4. MARRIED WOMEN—*Personal Liability—Pleading—Case at Bar.*—Under the act of March 7, 1900 (Acts 1899-1900, page 1240), married women may contract and be contracted with, sue and be sued as if unmarried, and personal judgments may be rendered against them, whether the right or liability accrued before or after the passage of the act. It is unnecessary to allege that a contract sued on was made with reference to her separate estate, and such allegation, if made, may be treated as surplusage. In the case at bar there was nothing in the nature of the case, as disclosed by the declaration, to make it necessary under sec. 3243 of the Code, to set forth the place where the notes in suit were made.

Error to a judgment of the Circuit Court of the city of Danville, rendered July 13, 1901, in an action of debt, wherein the defendant in error was the plaintiff, and the plaintiff in error and her husband were the defendants.

*Affirmed.*

The opinion states the case.

*Blackford, Horsley & Blackford* and *Peatross & Harris*, for the plaintiff in error.

*Berkeley & Harrison*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

In February, 1901, Josephine B. Hart, the defendant in error, instituted her action of debt against H. M. Young and Sadie S., his wife, upon two promissory notes. The notes are alike in every respect except as to amounts, one being for $7,000 and the other for $537. The following is a copy of the larger note:

"$7,000.                    "CHARLEROI, PA., *April 8, 1895.*

"One year after date, for value received, we, or either of us, promise to pay Josephine B. Hart or order the sum of seven thousand dollars with interest at six *per cent. per annum* at Bank of Kentucky, Louisville, Ky.

"H. M. YOUNG;
"SADIE S. YOUNG."

There was a judgment by default against the husband. The wife made defence, and upon the trial of the cause all matters of law and fact having been submitted to the decision of the court, there was a personal judgment against the wife for the aggregate amount of the notes. To that judgment this writ of error was awarded upon the application of the wife.

It appears that the plaintiff, Mrs. Hart, after the death of her husband, about the year 1879, received $4,000 or $5,000 from insurance policies on his life, which she placed in the hands of Mr. Young for investment. At that time both Mrs. Hart and Mr. Young resided in Louisville, in the State of Kentucky. About the year 1885 the latter, having in the meantime married, removed to Kansas City, in the State of Missouri, retaining the money of Mrs. Hart for the purposes of investment, as she contends, or as her debtor, as he insists. In the year 1890 Mrs. Hart, upon advice, went to Kansas City, made a settlement with Mr. Young, and took his and his wife's joint note for the sum of $5,500, payable at the Bank of Kentucky in Louisville, State of Kentucky, July 1, 1890. The note was not paid, and in January, 1891, the parties, by agreement, met in Chicago, in the State of Illinois, where Young and his wife made and delivered three promissory notes of equal amounts for the balance due on the Kansas City note, which were all payable in the city of Chicago. Young and wife, after residing in the last-named city for some time, removed to Charleroi, in the State of Pennsylvania, where the notes in suit were made and delivered by Young and wife to the agent of Mrs. Hart for the principal and interest due on the Chicago notes, which were then and there surrendered.

At the time the notes sued on were made, there is no question that the State of Pennsylvania was the actual domicile, if not the legal domicile, of Young and wife. The capacity of the wife to make the notes is put in issue by the pleadings. She insists that the debt for which the notes were given was her husband's debt, and that she was merely surety thereon, and that neither under the laws of Pennsylvania, where the notes were made and delivered, nor under the laws of Kentucky, where they were to be paid, were they valid contracts as to her.

By the Pennsylvania act of June 8, 1893 (Act No. 284, p. 344), it is provided by section 1 "that hereafter a married

woman shall have the same rights and powers as an unmarried person to acquire, own, possess, contract, use, lease, sell or otherwise dispose of any property of any kind, real, personal or mixed, and either possession or expectancy, and may exercise the said right and power in the same manner and to the same extent as an unmarried person, but she may not mortgage or convey her real property unless her husband join in such mortgage or conveyance."

Section 2 of the act provides that "hereafter a married woman may in the same manner and to the same extent as an unmarried person make any contract in writing or otherwise, which is necessary, appropriate, convenient or advantageous to the exercise and enjoyment of the rights and powers granted by the foregoing section, but she may not become accommodation endorser, maker, guarantor, or surety for another, and she may not execute or acknowledge a deed or other written instrument conveying or mortgaging her real property unless her husband joins in such mortgage or conveyance."

By section 2127 of the Kentucky Statutes of 1899 it is provided, among other things, that "no part of a married woman's estate shall be subjected to the payment or satisfaction of any liability upon a contract made after marriage to answer for the debt, default or misdoing of another, including her husband, unless such estate shall have been set apart for that purpose by deed or mortgage or other conveyance," etc.

It is proved in the case that by the law of Illinois a married woman may make contracts and incur liabilities to the same extent and in the same manner as if she were a *feme sole.* The notes made by Young and wife in Chicago, and made payable there, were clearly Illinois contracts, and valid and binding upon Mrs. Young as well as upon her husband. Whether Mrs. Young was, as between her husband and herself, a surety, as she insists, or was in fact jointly liable with her husband for the debt, as the plaintiff's evidence tends to show, she could have

been sued upon those notes, and a personal judgment recovered against her, in either the State of Pennsylvania or in the State of Kentucky; for it seems to be well settled that a contract of a married woman, valid where made and to be performed, is valid everywhere, unless she be domiciled in a State where the law of the domicile imposes a total incapacity to contract on the part of its married women. Where the common law prevails in full force by which a married woman is deemed incapable of binding herself by any contract whatever, it has been held in some cases, and suggested in others, that this utter want of capacity must be considered as so fixed by the settled policy of the State that its courts could not yield to the law of another State in which she might undertake to contract. *Armstrong* v. *Best,* 112 N. C. 59, 17 S. E. 14, 25 L. R. A. 188, 34 Am. St. Rep. 473; *Milliken* v. *Pratt,* 125 Mass. 374, 28 Am. Rep. 241; Minor on Conflict of Laws, sec. 72.

The Circuit Court was of opinion that, treating Mrs. Young as a mere surety on the Chicago notes, which she had the unquestioned capacity to make, she could have been sued upon them in either the State of Pennsylvania or the State of Kentucky, and personal judgment recovered against her, and that the renewal of the notes in the State of Pennsylvania under the facts of this case did not release her, nor lessen her liability.

Without entering into consideration of that question, there is another ground upon which we think the judgment of the Circuit Court can be placed, which is free from difficulty or doubt.

Whilst the weight of evidence perhaps tends to show that the debt for which the notes were given was the husband's, and not the wife's debt, yet there is direct and positive proof to the contrary. Dr. Breyfogle, one of the plaintiff's witnesses, and her adviser in the matter, in answer to the question whether or not he knew that Mrs. Young received the benefit of the money for which the notes were given, or any part thereof, testified that he was "sure that Mrs. Young had the full benefit of the

money from the fact, as Mrs. Young informed me, that at the time of his marriage that money was well invested, and immediately after his marriage both he and Mrs. Young expended a considerable sum when Mr. Young was not in a position to earn any considerable part of said expense, and they could only have procured this money by converting the said investments into cash after their marriage. In addition to the above, I know that Mrs. Young admitted it was a joint liability, and that it was her debt as well as her husband's." He further testified that the Chicago notes were made for the purpose of fixing beyond any question the joint liability of both parties thereto under the laws of the State of Illinois, and that this was so understood by both Mr. and Mrs. Young at the time the notes were given. The latter, in her correspondence with the plaintiff, seems to treat the notes as evidencing a debt due from them jointly, and not merely a liability for which she was surety.

Upon a demurrer to the evidence—and the case, by express statutory provision (Code 1887, sec. 3484), must be so considered in this court—there is sufficient evidence to establish the fact that Mrs. Young was jointly liable with her husband for the debt evidenced by the notes sued on. This being so, it is wholly immaterial whether the notes be treated as Pennsylvania contracts, the State where they were made and delivered, or Kentucky contracts, the State where they were to be paid; for by the laws of either of those States the contracts were such as Mrs. Young had the right to make, and, being valid where contracted and to be performed, they will be enforced by the courts of this State in the manner provided by its laws, for as to the remedy upon foreign contracts the law of the forum governs. Minor on Conflict of Laws, sec. 205; Story on Conflict of Laws, sec. 556; *Union Life Ins. Co.* v. *Pollard*, 94 Va. 146, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. Rep. 715; *Freeman's Bank* v. *Ruckman*, 16 Gratt. 126.

By section· 2 of an Act of Assembly, approved March 7, 1900 (Acts 1899-1900, p. 1240, c. 1139), which was in force when this action was instituted, it is provided that a married woman may contract and be contracted with, sue and be sued, in the same manner and with the same consequences as if she were unmarried, whether the right or liability asserted by or against her shall have accrued before or after the passage of the act.

Being liable on the notes as an unmarried woman whether they be treated as Pennsylvania or Kentucky contracts, there was clearly no error in rendering a personal judgment against her.

The demurrer to the declaration was properly overruled.

The allegation that Mrs. Young was a married woman, owning separate estate, and that the contracts sued on were made with reference to such estate, were wholly unnecessary under the act approved March 7, 1900, *supra,* and was mere surplusage. The declaration stated a good cause of action, and there was nothing in the nature of the case, as disclosed by the declaration, to render it necessary under section 3243 of the Code of 1887 to set forth the place where the notes declared on were made.

Upon the whole case we are of·opinion that there is no error in the judgment complained of, and that it should be affirmed.

*Affirmed.*